Booth, Chief Justice,
delivered the opinion of the court:
On January 26, 1931, Senate Resolution 404 of the 71st Congress, 3d session, was approved. This resolution is as follows:
“That the claim of the Creek Nation of Indians for compensation from the United States for lands acquired by the United States from said Indian tribe under Article 1 of the treaty of August 9, 1814 (7 Stat. 120), be, and the same is hereby, referred to the Court of Claims in accordance with the provisions of section 151 of the Judicial Code (U. S. C., sec. 257; 44 Stat. [Part 1] 898); and said court is authorized ^
On the date of passage of the resolution there was pending in the Senate the following bill:
“Beit enacted by the Senate and House of Representatives of the United States of America, That the Secretary of the Interior be, and he is hereby, authorized and directed to certify to the. Secretary of the Treasury an account of the proceeds derived from the sale of the territory in Georgia and Alabama, ceded to the United States by Article 1 of the treaty of August 9, 1814, between the United States of America and the Creek Nation of Indians, deducting therefrom the cost of survey and sale, and there is hereby authorized to be appropriated the amount so certified to the Secretary of the Treasury for the purpose of placing the same to the credit of the Creek Nation of Indians of Oklahoma upon the books of the Treasurer to be disbursed in accordance with existing law.”
On February 28, 1931, a petition was filed in this court, invoking the court’s jurisdiction under section 151 of the Judicial Code. The above section of the code is in the following language:
“Sec. .151. Whenever any bill, except for a pension, is pending in either House of Congress providing for the payment of a claim against the United States, legal or equitable, or for a grant, gift, or bounty to any person, the House in which such bill is pending may, for the investigation and determination of facts, refer the same to the Court of Claims, which shall proceed with the same in accordance with such rules as it may adopt and report to such House the facts in the case and the amount, where the same can be liquidated, including any facts bearing upon the question whether there has been delay or laches in presenting such claim or applying *665 for such, grant, gift, or bounty, and any facts bearing upon the question whether the bar of any statute of limitation should be removed or which shall be claimed to excuse the claimant for not having resorted to any established legal remedy, together with such conclusions as shall be sufficient to inform Congress of the nature and character of the demand, either as a claim, legal or equitable, or as a gratuity against the United States, and the amount, if any, legally or equitably due from the United States to the claimant: Provided, however, That if it shall appear to the satisfaction of the court upon the facts established, that under existing laws or the provisions of this chapter, the subject matter of the bill is such that it has jurisdiction to render judgment or decree thereon, it shall proceed to do so, giving to either party such further opportunity for hearing as in its judgment justice shall require, and it shall report its proceedings therein to the House of Congress by which the same was referred to said court.”
The petition in the case was signed by P. E. Ewing, Jackson Thompson, Joseph Bruner, and S. H. Miller, deriving authority so to do as members of what they allege to be known as the Creek representative committee, the Creek tribal organization being without a principal chief or tribal council. The act of May 24, 1924 (43 Stat. 139), is cited as their authority to employ attorneys and prosecute this case.
The Government on April 25, 1931, filed a motion to dismiss the petition. The case was set down for a hearing and was thereafter on December 8, 1931, argued orally before the court and submitted.
Defendant's motion is predicated upon an absence of jurisdiction of this court under section 151 of the Judicial Code to take testimony, make findings of fact, and transmit the same to Congress.
The extent of the court’s jurisdiction imder section 151, herein quoted, has been many times adjudicated. The issue of jurisdiction, aside from its importance, has generally arisen with respect to bills referred, no two of which have been precisely similar in verbiage. It is conceded that the resolution referring the bill is of consequence only as evidence of legislative action effecting the transfer of the bill from the Senate to this court. State of Missouri v. United States, 43 C. Cls. 327. The jurisdiction of the court is dependent exclusively upon the bill referred, and from its terms the *666 imperative duty is cast upon the court to ascertain whether it is a bill providing for the payment of a claim against the United States, legal or equitable, or for a grant, gift, or bounty. If it is not such a bill the jurisdiction of the court under section 151 clearly does not attach. The manifest intent of section 151 of the Judicial Code as frequently held by this court, is to enable either House of Congress to send to this court a bill of the character mentioned for this court to find the facts involved in accord with judicial methods, and report the same to the House, referring the bill for such further action as may be deemed appropriate. Bills of the character comprehended by section 151 originate either because of claimed legal or equitable rights incapable of enforcement by any other remedy, or equitable rights dependent upon a gift or bounty. Congress in the enactment of the section indicated a distinct purpose to remove from its operation all claims cognizable by the court under its general jurisdictional statute, and thereby conferred upon the suitor a right to procure a judgment in the event the claim is established according to existing law, even though the claim came to the court by way of a reference under section 151. The effect of the proviso to the section, taken into consideration with the Crawford amendment to section 151 (38 Stat. 962, 996), is to limit the court’s jurisdiction to bills for the payment of claims, legal, or equitable, or for gifts, grants, or bounty, to which the statute of limitations — section 156 of the Judicial Code — is inapplicable, and which do not fall within the court’s general jurisdiction under the other provisions of the Tucker Act.
It is evident from the language of the bill now under consideration that the court must be satisfied from its language that it comes within the scope of section 151, for clearly it does not fall within our general jurisdiction. A claim is, “in a just juridical sense, a demand of some matter as of right made by one person upon another, to do or to forbear to do some act or thing as a matter of duty.” Prigg v. Commonwealth of Pennsylvania, 16 Pet. 539. The bill here in issue lacks the essential element of a “demand”; from its language, whatever controversy existed as to the right of the Indians to the proceeds derived from the sale of the lands described in the treaty of August 9, 1814, is by the bill resolved in favor *667 of tbe Indians, and the Secretary of the Interior is not only authorized but directed to ascertain the amount due the Indians and certify the same to the Secretary of the Treasury for payment. Obviously, if the bill had passed, all controversy over respective rights would have ceased and ministerial functions alone called into action. No single provision of the bill enables the United States to defend against a demand. The claim that perhaps once existed has, according to the terms of the bill, ceased to exist, the demand involved in its presentation to Congress merged into a proposed granted right, and all that remained was an accounting and the vitalization of the demand by congressional action. If the court is limited by the language of the bill all that the court could do would be to follow the course commanded of the Secretary of the Interior, a mere process of accounting. Does the bill then provide for the payment of a grant, gift, or bounty? We may at once eliminate the question of a gift or bounty. No argument is advanced from any source that such is the case. Conceding that demand arose from the provisions of a grant, i. e., by treaty stipulations the Indians were to have the proceeds derived from the sale of the ceded lands. We are again confronted with the fact that the bill recognizes this right; it is neither controverted nor defended against. All that the language of the bill does is to consummate a settled controversy, remove it from the realm of claim, and project it into the realm of settlement for a claim. No justiciable issue is in any sense involved, no demand subjected to judicial inquiry or investigation, no treaty to be construed; nothing more to be done except to ascertain the amount of the proceeds derived from the sale of the land, deduct the provided-for expenses, and certify the balance due. Surely such express provisions, mandatory and limited, leave ’ open no room for the assertion of a claim, no discretion as to legal rights, a matter of accounting. In the court’s liberal construction uniformly given to section 151 of the Judicial Code we do look to the intent of the legislative proceedings which inspired the introduction of the bill, Dowdy case, 26 C. Cls. 220, to the facts and other surrounding circumstances which characterize the transaction and ascertain what is intended to be referred by the bill, and if it is apparent that a claim is referred we have in a measure disregarded mere *668 verbiage and proceeded to find the facts. We would do the same in this case, but the report of the committee and the express provisions of the bill do not warrant us in doing so, and would in our opinion render the court susceptible to the charge of having exceeded our jurisdiction and disregarded the provisions of section 151. The only facts which this court could report to Congress under the reference would be such facts as constitute a mere matter of accounting. Cahalan v. United States, 42 C. Cls. 280; White River Utes v. United States, 43 C. Cls. 260; Meeha v. United States, 48 C. Cls. 258.
The defendant raises several other serious obstacles to our jurisdiction, all of which we have considered but deem it unnecessary to discuss. We think the defendant’s motion to dismiss must be allowed and the petition dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; and Green, Judge, concur.
Littleton, Judge, dissents.